UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60200-CR-DMM

UNITED STATES OF AMERICA

vs.

YASHICA BAIN,

    Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Yashica Bain (the "Defendant"). The Defendant is presently set for sentencing before the Court on December 9, 2021 for her conviction by guilty plea to one count of conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 371. The offense stems from the Defendant's receipt of a fraudulent Paycheck Protection Program ("PPP") loan of $415,232 on behalf of her company, Microblading Brow Studio ("MBS"), and $300,032 in fraudulent loans sought through another conspirator that the Defendant referred to the scheme, for a total intended loss of $715,264.

For the reasons set forth herein, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 24 months, to be followed by three years of supervised release.[1] A sentence of 24 months' imprisonment represents the bottom of the applicable range of the United States Sentencing Guidelines (the "Guidelines") as calculated by

---

[1] The United States is also seeking forfeiture of $415,232 and restitution, consistent with the Plea Agreement [ECF No. 29 ¶¶ 13, 17]. The Defendant has also agreed to pay a special assessment of $100 [ECF No. 29 ¶ 5].

the United States Probation Office ("Probation") in the Presentence Investigation Report, disclosed December 2, 2021 [ECF No. 39] (the "PSR"), to which the government has no objection. Furthermore, the sentence recommended herein by the United States will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I. FACTUAL BACKGROUND

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. One of those programs was the PPP. Against this backdrop, the Defendant and her co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and have done so by conspiring with James Stote, Keyaira Bostic, and others. The Defendant obtained a fraudulent PPP loan for her own company, MBS, with Stote providing falsified documents and submitting the application on the Defendant's behalf in exchange for a kickback from the loan proceeds. To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms.

### A. The CARES Act

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP. The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP funding. These funds were designed to address the unprecedented crisis facing Americans—

especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need. To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses. The supporting documentation requirement was minimal, and could be satisfied with one years' worth of the company's tax records. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

**B.    Overview of Defendant's Conduct**

A more detailed recitation of the facts relating to the scheme are detailed in the Information [ECF No. 17], Defendant's factual proffer statement [ECF No. 30], and the PSR [ECF No. 39].

Beginning in May 2020 through in or around at least August 2020, the Defendant conspired with Stote, Bostic, and others to obtain by fraud a PPP loan on behalf of MBS, a Florida limited liability company for which the defendant is the registered agent and manager.

In furtherance of the conspiracy, the Defendant caused the submission of a PPP loan application on behalf of the MBS that the Defendant knew contained materially false and fraudulent representations, including both the number of employees that MBS had during each quarter of 2019 and the amount of wages paid by MBS during each quarter of 2019. Specifically, on May 23, 2020, Stote submitted at Defendant's request, four (4) signed and dated Internal Revenue Service ("IRS") Forms 941 (titled, "Employer's Quarterly Federal Tax Returns"), that is,

3

one for each quarter of 2019 (collectively, the "Forms 941"), each of which falsely represented that MBS had 21 employees during each quarter of 2019.

In addition to the Forms 941, Stote submitted, at Defendant's request, an electronically signed PPP loan application form on behalf of MBS, which falsely represented that MBS had 21 employees and an average monthly payroll of $166,093.

Bank Processor 1 approved a PPP loan for MBS in the amount of $415,232, which Bank 1 funded. Thereafter, the Defendant paid a kickback to Stote in the amount of $28,800. Defendant wired this kickback money to Stote, and in the wire documents, she falsely claimed that this money was to remodel her salon (MBS). Defendant also spent the loan proceeds, which were supposed to go to legitimate payroll expenses, on herself and others. For instance, on June 30, 2020, Defendant wired herself approximately $48,600 for "back pay wages" and wrote herself a check on July 10, 2020 for "wages." Defendant also wrote checks to others indicating the payments were for "payroll" and "wages" despite those individuals having never worked for MBS.

## II. PROCEDURAL HISTORY

On March 16, 2021, the Defendant was charged by complaint with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344 [ECF No. 1]. Following waiver of indictment, on July 19, 2021, the Defendant was charged in an Information with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371 [ECF No. 17]. The Defendant pleaded guilty to the Information pursuant to a written plea agreement on September 30, 2021 [ECF No. 28]. Sentencing is presently scheduled for December 9, 2021.

**III.   SENTENCING GUIDELINES CALCULATIONS**

As explained below, the United States submits that the Defendant's Total Offense Level is 17. At Criminal History Category I, this produces an advisory Guidelines range of 24-30 months of imprisonment pursuant to the Sentencing Table in Chapter 5, Part A of the Guidelines.

**A.   The PSR Correctly Computes the Offense Level**

As set forth in the PSR, Probation computes the Total Offense Level at 19 (PSR ¶¶ 35-44). The United States concurs with the Offense Level computation in the PSR, which is as follows:

| Base Offense Level, § 2B1.1(a)(2) | 6 |
|---|---|
| Loss greater than $550,000 but less than $1,500,000, § 2B1.1(b)(1)(H) | 14 |
| Acceptance of Responsibility and Timely Notification § 3E1.1(a) and (b) | (3) |
| **Total Offense Level** | **17** |

The Defendant does not object to the calculation of the Guidelines.

**IV.   CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)**

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the sentence recommended by the United States.

**A.   Nature and Circumstances of the Office**

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by submitting a false application claiming to have employees and payroll

that did not exist.  Her application was supported by false tax forms and a fictitious bank statement.  The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range.  The United States' recommended sentence at the bottom of the Guidelines range, is sufficient but not greater than necessary to accomplish this goal.

      B.      **History and Characteristics of the Defendant**

The Defendant is a 38-year-old woman who has operated MBS since 2015.  [ECF No. 39 at ¶ 67].  She is also the co-owner of a bar and has worked as a real estate agent between 2012-2019.  (*Id.* at 69).  The Defendant is not married and has four children, three of whom are minors.  (*Id.* ¶¶ 56-58).  The Defendant has no criminal history points.  (*Id.* ¶ 48).

The Defendant agreed to plead guilty before being indicted, and thus deserves credit for accepting responsibility early and saving the government considerable resources in preparing for grand jury and a trial.  The sentence recommended by the United States reflects such acceptance because it is within the Guidelines produced by the Offense Level that has been adjusted downward by three levels for acceptance of responsibility pursuant to Section 3E1.1(a) and (b).

      C.      **Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant**

The sentence in this case should address a need for both general and specific deterrence.  As to general deterrence, the Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014).  As explained above, this case was motivated by greed at time when millions of Americans were suffering from the economic impact of a global pandemic.  As the pandemic spread, so too did fraud related to the PPP program and other programs designed to

provide critical economic assistance—especially in the Southern District of Florida. The government's recommended sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Actors like the Defendant who seek to defraud these programs not only drain the program of limited funding, they make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

Furthermore, a sentence at the bottom of the Guidelines range is sufficient to protect the public from future crimes of this Defendant, who has no criminal history points. With this sentence, the government believes the risk of recidivism is low.

### D. Need for the Sentence to Avoid Unwarranted Sentencing Disparities

The sentence recommended by the United States will not create an unwarranted sentencing disparity. There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case. While a relatively small number of defendants have been sentenced to date for offenses related to PPP fraud, judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment. *See, e.g.*, *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple fraudulent PPP loans);

7

*United States v. Ganell Tubbs*, 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

Seven other conspirators in this scheme have been sentenced. On October 18, 2021, the court sentenced co-conspirator Devonte Thames to 31 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Thames*, Case No. 21-cr-60125-RKA (S.D. Fla.). The sentence was at the bottom of the adjusted Guidelines range after the court granted the government's motion, pursuant to Section 5K1.1, and reduced Thames' sentence by approximately 33%. Meanwhile, on October 13, 2021, the court sentenced co-conspirator Dennes Garcia to 18 months imprisonment – which was at the bottom of the Guidelines range – three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Garcia*, Case No. 21-cr-60146 (S.D. Fla.).

In addition, on July 13, 2021, the court sentenced co-conspirator Tiara Walker to one year and one day, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Walker*, Case No. 20-cr-60159-RAR (S.D. Fla.). On July 27, 2021, co-conspirator Tonye Johnson was sentenced by the court to 18 months in prison, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Johnson*, Case No. 21-CR-60017-RKA (S.D. Fla.). On September 24, 2021, the court sentenced Brian Arnold to time served, three years of supervised release, including one year of home confinement, 600 hours of community service, and ordered him to pay restitution and forfeiture. *United States v. Arnold*, No. 21-CR-20331 (S.D. Fla.). Unlike defendants Smith, Thames, Walker, and Johnson, the proceeds for Defendant Arnold's fraudulent PPP loan were immediately frozen before he could pay any

8

kickbacks or otherwise spend the funds. On October 8, 2021, the court sentenced Cindi Denton to six months imprisonment, three years of supervised release, including one year of home confinement, and ordered her to pay restitution and forfeiture. *United States v. Denton*, No. 21-CR-60171 (S.D. Fla.). Defendants Walker, Johnson, Arnold, and Denton had no criminal history points; they each sought fraudulent PPP loans for their own companies, for less than $500,000 each, and did not refer others to the scheme.[2] On July 30, 2021, the court sentenced Andre Clark to 33 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Clark*, Case No. 21-CR-60029 (S.D. Fla.). Defendant Clark sought his own fraudulent PPP loan and also referred other conspirators to the scheme, and he did so with a significant criminal history. Defendant Clark's sentence was at the bottom of the Guidelines as calculated by the court, after the court held that a two-level minor role reduction was warranted because Clark ultimately received very little from the scheme, so his Guidelines loss amount greatly exceeded his personal gain.[3]

The intended loss amount of $715,264 attributable to the Defendant is an important measure of her relative culpability as compared to co-conspirators in a scheme involving over 90 fraudulent loan applications and over $35 million in intended losses. That is, the co-conspirators who led and organized the scheme in this case and were involved in preparing or submitting even more fraudulent loan applications will be responsible for a greater intended loss amounts, and a

---

[2] Notably, however, defendant Johnson tested positive for marijuana during the presentence investigation and attempted to conceal his marijuana use from Probation by using a device to provide urine from someone other than the test taker.

[3] Based primarily on his referrals, Clark's loss amount for sentencing purposes was between $3,500,000 and $9,500,000. However, Clark ultimately received little money from the scheme, which the sentencing court found to be a significant factor at sentencing.

correspondingly higher advisory Guidelines range under Section 2B1.1. A sentence of 24 months for this Defendant, who is being held responsible only for the loss associated with her fraudulent loan and those she referred to the scheme, will provide a consistent framework for future sentences of co-conspirators in this conspiracy whose Guidelines correlate to the losses for which they are directly responsible.

V.      **RESTITUTION & FORFEITURE**

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). As set forth in the Plea Agreement [ECF No. 29 ¶ 17], the United States and the Defendant have agreed that the Defendant owes restitution. Restitution is owed joint and severally with the Defendant's co-conspirators charged in at least the following related cases: *United States v. Stote*, 21-CR-00805-PAB (N.D. Ohio); *United States v. Bostic*, 20-60139 (S.D. Fla.).

Furthermore, pursuant to the Plea Agreement, the Defendant agreed to a forfeiture money judgment in the amount of $415,232. [ECF No. 29 ¶ 13.] On December 1, 2021, the Court entered a preliminary order of forfeiture in which the Court entered a forfeiture money judgment of $415,232 pursuant to 18 U.S.C. § 982(a)(2)(A). [ECF No. 38.]

*       *       *

## CONCLUSION

For the forgoing reasons, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of twenty-four (24) months, to be followed by a term of supervised release of three (3) years. The United States also requests that the Court order restitution, forfeiture, and a special assessment, consistent with the Plea Agreement [ECF No. 29] and the point and authorities discussed herein.

Respectfully Submitted,

| | |
|---|---|
| JUAN ANTONIO GONZALEZ<br>UNITED STATES ATTORNEY | JOSEPH S. BEEMSTERBOER<br>ACTING CHIEF, FRAUD SECTION |
| By:  /s/ *Yisel Valdes*<br>YISEL VALDES<br>Assistant United States Attorney<br>Florida Special Bar No. A5502330400<br>North Miami Avenue<br>Miami, FL 33131<br>Tel: (305) 961-9260<br>Fax: (954) 695-0651<br>Email: yvaldes1@usdoj.gov | By:  /s/ *Philip B. Trout*<br>PHILIP B. TROUT<br>Trial Attorney, Fraud Section<br>U.S. Department of Justice<br>1400 New York Ave NW<br>Washington, DC 20530<br>Tel: (202) 616-6989<br>Fax: (202) 514-3708<br>Email: philip.trout@usdoj.gov |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 3, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

*/s/ Philip Trout*
Trial Attorney
